## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LOU BERTHA MCKENZIE-WHARTON,
and RICHARD G. WHARTON,

     Plaintiffs,

v.                                 CASE NO. 8:15-cv-114-17MAP

UNITED AIRLINES, INC.,

     Defendant.

_____/

## ORDER

This matter comes before the Court pursuant to Defendant United Airlines, Inc.'s motion for summary judgment (Dkts. 44, 45, 58), to which Plaintiffs respond in opposition (Dkts. 52, 53). Three months after filing the motion for summary judgment, United filed a second motion for summary judgment (Dkt. 68), in violation of this Court's Case Management and Scheduling Order. Plaintiffs move to strike the second motion (Dkt. 69), and also respond in opposition (Dkts. 70, 71). Upon consideration, United's motions are **DENIED.**

## BACKGROUND

While boarding a flight to Tampa, a United flight attendant allegedly dropped a piece of luggage on Plaintiff Lou Bertha McKenize-Wharton ("Plaintiff"). Plaintiff and her husband, Richard G. Wharton, sue United for negligence and loss of consortium, based on a theory of vicarious liability.

The flight attendant, Karen Jackson, is not a party to this action, and the parties do not currently dispute her negligence. Instead, United argues that Jackson was acting

outside the scope of her employment because she was traveling as a passenger.  Under the unique facts of this case, the Court agrees with Plaintiffs that a jury question exists as to whether Jackson was acting within the scope of her employment.  The relevant facts follow.

Jackson works for United as an international flight attendant, based in Newark, New Jersey.  (Dkt. 52 at ¶ 3).  Approximately three times a month, Jackson flies from Newark to Mumbai, India and back to Newark.  (Id. at ¶ 5).  Although Jackson is based in Newark, she lives in Tampa, Florida.  (Dkt. 45-1, "Jackson Dep." at 3, 27, 34).  After finishing her assigned route, Jackson usually flies from Newark back to Tampa, if she can find a flight with an available seat.  (Id. at 34).

On the day of the incident, June 12, 2014, Jackson arrived in Newark on a flight from Mumbai.  (Dkt. 52 at ¶¶ 7-8).  The first available flight from Newark to Tampa was United Flight 1553.  (Id. at ¶¶ 14-15).  Jackson was assigned to a jump seat, as a "Pass Rider Space Available" ("PRSA") passenger.  (Id. at ¶ 13).  As a PRSA passenger, Jackson did not pay for a ticket, which was one of the benefits of her employment.  (Jackson Dep. at 31).

Plaintiff was also traveling on Flight 1553.  (Dkt. 52 at ¶ 21).  When Jackson boarded the aircraft, Plaintiff was already seated in the last row, in an aisle seat.  (Jackson Dep. at 10-11; Dkt. 53-1, "Pl. Aff." at ¶¶ 3-4).  Jackson's jump seat was directly behind Plaintiff, next to the lavatories and galley.  (Dkt. 53-5, "Garcia Dep." at 11).  When Jackson reached Plaintiff's row, she stopped to introduce herself to the crew and to stow her luggage.  (Jackson Dep. at 11).  Plaintiff alleges that Jackson then dropped a piece of

luggage on her ankle, resulting in ligament and nerve damage.[1]  (Pl. Aff. at ¶ 4).

The lead flight attendant for Flight 1553, Nicholas Garcia, received a call from the back of the plane alerting him "that something had happened to a passenger regarding a piece of luggage." (Garcia Dep. at 7, 9, 15).  Although Garcia testified that Jackson did not make the call, the other flight attendants on board denied making the call or did not remember making the call.  (Dkt. 53-7 at 6-7; Dkt. 53-9 at 8; Dkt. 53-8 at 6, 12).  In light of this evidence, and because the phone required special dialing codes, Plaintiffs assert that Jackson made the call.  (Dkt. 53-3 at ¶ 7.6; Dkt. 53-9 at 8-9; Garcia Dep. at 15; Dkt. 52 at ¶ 48).

According to Plaintiff, Jackson was wearing a flight attendant's uniform on Flight 1553, and "during the flight she assisted the flight crew as I would expect a working flight attendant to do." (Pl. Aff. at ¶ 5).  Jackson testified that she did not specifically recall performing tasks on Flight 1553, but "I'm sure I did." (Jackson Dep. at 29).  When flying as a PRSA passenger, Jackson "always offer[s] [her] services." (Id. at 12).  In particular, she will "make drinks," "collect rubbish," "sell[] cold food on board," "direct people in and out of the lavatories," and provide "any assistance that is needed." (Id. at 12, 29).  Jackson voluntarily provides these services as "a courtesy to the in-flight staff" and to "make sure that our customers get the best of service." (Id. at 17-18, 27, 29-30).

Jackson was not paid wages to work on Flight 1553.  (Id. at 26-27).  In fact, United maintains that federal regulations prohibited Jackson from working on Flight 1553, because

---

[1] Although not material to the instant motions, the record indicates that Jackson boarded with five bags, in violation of United's limit for carry-on baggage. (Garcia Dep. at 13; Dkt. 53-3 at ¶ 9.1; Dkt. 53-6 at 65).  Jackson maintains that none of her luggage came in contact with Plaintiff.  (Jackson Dep. at 14).

she had previously worked over 16 hours on the flight from Mumbai, without taking a rest break.  (Dkt. 52 at ¶¶ 9, 20; Jackson Dep. at 30); see 14 C.F.R. § 121.467(b)(7).

According to Jackson, she was not reprimanded for anything that happened on Flight 1553.  (Jackson Dep. at 13, 30).  Plaintiffs' expert, Linda Fow, opines that United was aware that jump-seat passengers were working while off-the-clock.  (Dkt. 53-3 at ¶ 9.4).

On October 3, 2014, Plaintiffs filed this action in state court.  (Dkt. 2).  Invoking this Court's diversity jurisdiction, United removed the case on January 20, 2015.  (Dkt. 1).  Plaintiff brings a single claim for negligence against United based on vicarious liability, and her husband seeks damages for loss of consortium.  (Dkt. 2).

On May 23, 2016, United filed its first motion for summary judgment, arguing that Jackson was acting outside the scope of her employment.  (Dkt. 45).  On August 15, 2016, United filed a second motion for summary judgment—in violation of this Court's Case Management and Scheduling Order—in which United contends that Plaintiffs' failure to disclose a medical expert necessarily means that she is unable to establish the causation prong of her negligence claim.  (Dkt. 68).  The Court addresses the motions in turn.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The moving party may meet its burden by "negating an element of the

non-moving party's claim," or by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." <u>Id.</u>

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1116 (11th Cir. 1993). If the moving party succeeds in discharging the initial burden, the burden shifts to the non-moving party to demonstrate that there is a genuine issue of material fact that precludes summary judgment. <u>Clark</u>, 929 F.2d at 608. A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). In assessing the sufficiency of the evidence, the court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." <u>Stewart v. Happy Herman's Cheshire Bridge, Inc.</u>, 117 F.3d 1278, 1285 (11th Cir. 1997).

## ANALYSIS

### Choice of law

This action presents a threshold choice-of-law issue, which is resolved under the choice-of-law principles of Florida, the forum state. <u>Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.</u>, 135 F.3d 750, 752 (11th Cir. 1998). In actions for personal injury, Florida courts apply the "significant relationship" test, which presumes that the law of the place of injury governs, unless another state has a more significant relationship to the dispute. <u>Alvarez v. U.S. Immigration & Customs Enf't</u>, 818 F.3d 1194, 1229 (11th Cir. 2016); <u>State Farm Mut. Auto. Ins. Co. v. Olsen</u>, 406 So. 2d 1109, 1110-11 (Fla. 1981). In

making this determination, Florida courts consider: (1) "the place where the injury occurred," (2) "the place where the conduct causing injury occurred," (3) "the domicil[e], residence, nationality, place of incorporation and place of business of the parties," and (4) "the place where the relationship, if any, between the parties is centered." Id.  Florida courts then take these "factual contacts" into account in assessing several general choice-of-law considerations:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the de termination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Mezroub v. Capella, 702 So. 2d 562, 565 (Fla. 2d DCA 1997); Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc., 485 F.3d 1233, 1242-43 (11th Cir. 2007).

It is undisputed that Plaintiff's injury occurred in Newark, New Jersey, while Flight 1553 was boarding.  (Dkt. 52 at 2, ¶ 10; Jackson Dep. at 11).  The presumption is therefore that New Jersey law applies.   Mezroub, 702 So. 2d at 565.   Indeed, United previously requested that Plaintiffs admit that New Jersey law governs.  (Dkt. 63-1 at ¶¶ 19-20). Nonetheless, the parties apply Florida law, without any discussion of the relevant factors. (E.g., Dkt. 45 at 15-16 n.3).

A review of the record indicates that Florida possesses at least some relationship to this action: Plaintiffs allege that they are domiciled in Florida, Jackson lives in Florida, and the flight on which the incident occurred was bound for Florida.  (Dkt. 2 at ¶¶ 2-3; Jackson Dep. at 3; Dkt. 52 at ¶ 10).  At this juncture, however, the Court declines to resolve the choice-of-law issue.  The laws of Florida and New Jersey are substantially

similar with respect to the issues raised in the instant motions, and the preferred course is to simply address those issues under the law of both states.  Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1171 (11th Cir. 2009); Fioretti v. Mass. Gen. Life Ins. Co., 53 F.3d 1228, 1234 (11th Cir. 1995); Tune v. Philip Morris Inc., 766 So. 2d 350, 352 (Fla. 2d DCA 2000).

### Scope of employment

United is vicariously liable for Jackson's alleged negligence only if Jackson acted within the scope of her employment.  Bennett v. Godfather's Pizza, Inc., 570 So. 2d 1351, 1353–54 (Fla. 3d DCA 1990); Carter v. Reynolds, 815 A.2d 460, 463 (N.J. 2003).   Under Florida and New Jersey law, an employee acts within the scope of his employment when: (1) "his act is of the kind he is employed to perform," (2) the act "occurs substantially within the time and space limits of employment," and (3) the act "is activated at least in part by a purpose to serve the master."  Kane Furniture v. Miranda, 506 So. 2d 1061, 1067 (Fla. 2d DCA 1987); Carter, 815 A.2d at 465.  Conversely, when an "employee steps aside from his employment to . . . accomplish some purpose of his own," the act is not within the scope of employment.  Trabulsy v. Publix Super Mkt., Inc., 138 So. 3d 553, 555 (Fla. 5th DCA 2014) (internal quotation marks omitted); Jones v. City of Hialeah, 368 So. 2d 398, 401 (Fla. 3d DCA 1979); Carter, 815 A.2d at 465-66.   A court should consider "whether there was a slight deviation or departure from the employment," and "whether the employer could have expected or foreseen the employee's conduct."  Masconi v. Regueiro, 778 So. 2d 471, 472 (Fla. 3d DCA 2001); Davis v. Devereux Found., 37 A.3d 469, 489 (N.J. 2012).

When the material facts are undisputed, the question of whether an employee was acting within the scope of her employment is an issue of law for the court to determine.

Johnson v. Gulf Life Ins. Co., 429 So. 2d 744, 746 (Fla. 3d DCA 1983).  However, "only where the facts are completely settled and the inferences to be drawn from the facts lead to but one conclusion can it be said that the issue is one which may be decided by the court as a matter of law."  Masconi, 778 So. 2d at 472.  "Where there are varying inferences to be made and conclusions to be drawn, the matter is one which should be submitted to a jury."  Id.; Mason v. Sportsman's Pub, 702 A.2d 1301, 1310 (N.J. Super. Ct. App. Div. 1997); e.g., Gilborges v. Wallace, 396 A.2d 338, 342-43 (N.J. 1978).

United initially argues that Plaintiffs have admitted that Jackson was acting outside the scope of her employment because Plaintiffs failed to respond to United's request for admissions on this subject.  See Fed. R. Civ. P. 36(a)(3).  After United raised this argument, Plaintiffs moved to withdraw the relevant admissions, and the Magistrate Judge granted the motion.  (Dkts. 46, 62).  The Court therefore proceeds to analyze the relevant factors in light of the evidence of record.

The first prong of the scope-of-employment inquiry asks whether Jackson's allegedly negligent conduct is "of the kind" that she was employed to perform.  Kane Furniture, 506 So. 2d at 1067.  United maintains that the analysis should be focused on Jackson's activities at the precise time of Plaintiff's injury—the boarding of Flight 1553—at which point Jackson was merely acting as a passenger.  Yet, United overlooks the fact that Jackson allegedly dropped her luggage on Plaintiff while she was introducing herself to the flight crew, which a regular passenger would not do.  (Jackson Dep. at 11).  The record also permits an inference that it was Jackson who reported the incident to the lead flight attendant using the flight crew's phone, which again, a regular passenger would not do.  (Dkt. 53-3 at ¶ 7.6).

8

The record further suggests that Jackson then performed the various duties of a working flight attendant on Flight 1553. Jackson testified that her duties as a flight attendant typically include ensuring passenger safety, serving beverages and meals, "mak[ing] sure that everyone is accommodated," and handling luggage. (Jackson Dep. at 7-8). Although Jackson could not specifically recall whether she performed these tasks on Flight 1553, she testified that she "always" offers her services when flying as a PRSA passenger and would make drinks, sell food, direct people in and out of the lavatories, collect rubbish, and provide "any assistance" that is needed. (Id. at 12, 29). Likewise, according to Plaintiff, Jackson "assisted the flight crew as I would expect a working flight attendant to do." (Pl. Aff. at ¶ 5).

Accordingly, taking the available inferences in Plaintiffs' favor, the record supports a finding that Jackson was performing "the kind" of work she was employed to perform at the time of boarding and throughout the flight, without any significant deviation. Because a factfinder could conclude that Jackson was doing exactly "what [her] employment contemplated," Burleson v. Stark, 357 So. 2d 1038, 1040 (Fla. 4th DCA 1978), United's authority is distinguishable.[2]

---

[2] E.g., Burke v. R.B. Baker Constr., Inc., No. 3:04-CV-1091, 2005 WL 2077308, at *4 (M.D. Fla. Aug. 29, 2005) (holding that the plaintiff produced no evidence that the allegedly negligent conduct "was the kind of work [the tortfeasor] was hired to perform"); Garcia v. City of Hollywood, 966 So. 2d 5, 7 (Fla. 4th DCA 2007) ("at the time of the accident, [the tortfeasor] was not in the process of carrying out a 'primary responsibility' of his job as a police officer"); Sussman v. Fla. E. Coast Props., Inc., 557 So. 2d 74, 76 n.1 (Fla. 3d DCA 1990) (explaining that a detour from the employee's place of business "was outside the scope of duties the employee was employed to perform"); Morera v. Sears Roebuck & Co., No. 15-15109, ___ F. App'x ___, 2016 WL 3227286, at *1 (11th Cir. June 13, 2016) (holding that an accident during the tortfeasor's personal break to eat breakfast and listen to the radio was not within the scope of his employment).

The second prong of the scope-of-employment inquiry examines whether the negligent conduct occurred "substantially within the time and space limits of employment." Kane Furniture, 506 So. 2d at 1067.   United does not meaningfully dispute that Jackson was acting in the "space limits" of her employment—on a United aircraft.   United instead argues that Jackson was not acting within the "time limits" of her employment because she was off-duty, she was not compensated for her time on the flight, and federal regulations prohibited her from working on Flight 1553.

The Court is not persuaded.   It is well-settled that an act is within the scope of employment even if it is "a crime, was not authorized by the employer, or was forbidden by the employer." Blount v. Sterling Healthcare Grp., Inc., 934 F. Supp. 1365, 1372 (S.D. Fla. 1996); accord Allard v. Eisenhauer, 971 F. Supp. 2d 458, 468 n.11 (D.N.J. 2013). Thus, to the extent that Jackson was prohibited from working on Flight 1553, that fact is not dispositive.   Similarly, although Jackson was not on-duty and was not paid wages for working on Flight 1553, a person providing gratuitous services may still subject the master to vicarious liability, assuming that the master retains sufficient control. Beul v. ASSE Int'l, Inc., 233 F.3d 441, 444 (7th Cir. 2000).  As explained below, the record demonstrates that United retained control over Jackson while she was flying as a jump-seat passenger.

The third prong considers whether the employee's conduct "is activated at least in part by a purpose to serve the master." Kane Furniture, 506 So. 2d at 1067.   United argues that Jackson's conduct served only her own personal purposes because she was commuting to her home in Tampa.   United relies on a line of cases holding "that an employee merely going to or coming from work . . . is not [acting] in the course of

10

employment."[3]  Holloway v. United States, 829 F. Supp. 1327, 1329 (M.D. Fla. 1993);

Carter, 815 A.2d at 413.  The New Jersey Supreme Court explains:

> Two rationales exist to support the "going and coming" rule. The first is that employment is suspended from the time the employee leaves the workplace until he or she returns. That suspension occurs because the element of "control" is deemed lacking. The second is that the employer derives no benefit from the commute. Those rationales are essentially inversions of the Restatement standards for vicarious liability. . . . In essence, when employees travel to or from work they are deemed to be acting in their own interests without constraints by the employer regarding the method or means of the commute.

Carter, 815 A.2d at 413 (internal quotation marks and citations omitted).

In this case, a factfinder could determine that Jackson was not engaging in a routine

commute.  First, United retained significant control over Jackson.  United's policies for

jump-seat passengers govern check-in procedures, the boarding process, and in-flight

conduct.  (Dkt. 53-6 at 65-71).  For instance, jump-seat passengers must abstain from

using alcohol prior to and during a flight, and must assist in an emergency.  (Id. at 69).

United's personal conduct rules for working flight attendants apply to jump-seat

passengers, except that jump-seat passengers who are not in uniform "may read or eat

discreetly while not facing customers."  (Id. at 67).

Second, United receives a benefit while Jackson is commuting on a United flight.

As discussed, when Jackson flies as a jump-seat passenger, she provides an array of

regular flight-attendant services as a "courtesy" to the flight crew and to provide customers

with "the best of service."  (Jackson Dep. at 18, 27, 29-30).  At the very least, United

---

[3] Under New Jersey tort law, this rule is subject to a number of "dual purpose" exceptions, originating in workers' compensation law, which the parties do not expressly invoke. Carter, 815 A.2d at 414; see also Robelo v. United Consumers Club, Inc., 555 So. 2d 395, 396 (Fla. 3d DCA 1989).

receives an intangible benefit when Jackson commutes as a PRSA passenger.  The record also indicates that Jackson may provide a direct pecuniary benefit to United by selling food to passengers.  (Id. at 12).

Finally, Plaintiffs identify sufficient evidence to allow a factfinder to conclude that Jackson's actions were foreseeable, which is another key consideration. Masconi, 778 So. 2d at 472; Davis, 37 A.3d at 489. Jackson's presence on a Newark-to-Tampa flight was not unexpected, given that United assigned Jackson to work out of Newark while she resided in Tampa, and United offered free flights, on a space-available basis, between the two locations. (Jackson Dep. at 27, 34).  In addition, Jackson's conduct on the flight was not only arguably foreseeable, it was apparently accepted by United as a matter of course: Jackson "always" offered her services, she was not reprimanded for anything that happened on Flight 1553, and Plaintiff's expert, Linda Fow, opined that United was aware that jump-seat passengers worked off-the-clock.  (Id. at 12-13; Dkt. 53-3 at ¶ 9.4).

Vicarious liability is premised on the notion "that one who expects to derive a benefit or advantage from an act performed on his behalf by another must answer for any injury that a third person may sustain from it." Carter, 815 A.2d at 463.  On the facts of this case, United fails to establish as a matter of law that Jackson was acting outside the scope of her employment.  United's first motion for summary judgment is therefore denied.

### Causation

Under Florida law and New Jersey law, a negligence claim requires proof of a causal link between the negligent conduct and the claimed injury.  Schwartz v. Wal-Mart Stores, Inc., 155 So. 3d 471, 473 (Fla. 5th DCA 2015); Townsend v. Pierre, 110 A.3d 52,

61 (N.J. 2015).  Three months after filing its first motion for summary judgment, United filed a second motion for summary judgment, which is based on Plaintiffs' failure to disclose a medical expert under Rule 26 of the Federal Rules of Civil Procedure.  Without a medical expert, United argues that Plaintiffs are unable to establish "medical causation" as a matter of law.  (Dkt. 68 at 4).

Although Plaintiffs oppose the motion on the merits, they also move to strike the motion as filed in violation of this Court's Case Management and Scheduling Order.  (Dkt. 69).  In particular, the CMSO provides: "A party's claims or defenses for which summary judgment is sought **shall** be presented in a **single** motion and incorporated memorandum of law which, absent prior permission of the Court, shall not exceed twenty-five (25) pages total. Multiple motions for summary judgment will not be permitted."  (Dkt. 12 at 2 (emphasis in original)).  The order further warns: "A violation of any of these directives will result in the court <u>sua</u> <u>sponte</u> striking a party's motion for summary judgment and incorporated memorandum of law without notice."  (<u>Id.</u>)

In response to the motion to strike, United provides no explanation for its failure to request permission to deviate from this Court's Order.  In fact, United demonstrates further disregard for this Court's rules by re-arguing the merits of its summary judgment motion. (Dkt. 72 at 5-9).  That argument constitutes an unauthorized reply, in violation of Local Rule 3.01(c), and it will be disregarded.

United maintains that it could not have filed its second motion for summary judgment until the expert-witness disclosure deadline expired and Plaintiffs failed to disclose a medical expert.  Even if this excused United's violation of this Court's

13

Order—and it does not—a review of the docket indicates that United should have been aware of the expert-witness issue before it filed the <u>first</u> motion for summary judgment.  On May 20, 2016, Plaintiffs moved for an extension of time to file their expert witness disclosures.  (Dkt. 42).  Plaintiffs specifically stated that they would be disclosing a flight-attendant expert, and they made no mention of a medical expert.  On May 23, 2016, this Court  granted the motion, allowing Plaintiffs until June 20, 2016 to submit an expert disclosure.  (Dkt. 43).  Rather than waiting to file a single motion addressing both the scope-of-employment and expert-witness issues, United prematurely filed its first motion for summary judgment.  (Dkt. 45).

While successive motions for summary judgment are not prohibited by the Federal Rules or controlling case law, a second motion for summary judgment is not permitted as of right.  <u>Fernandez v. Bankers Nat'l Life Ins. Co.</u>, 906 F.2d 559, 569 (11th Cir. 1990) (explaining that a second motion is not prohibited when "the district judge allows" such a motion).  Successive motions for summary judgment promote piecemeal adjudication and erode judicial economy.  <u>Allstate Fin. Corp. v. Zimmerman</u>, 296 F.2d 797, 799 (5th Cir. 1961). As a result, this Court specifically prohibits multiple motions for summary judgment. That prohibition is unquestionably within this Court's inherent power. <u>Young v. City of Palm Bay</u>, 358 F.3d 859, 864 (11th Cir. 2004).

Given United's willingness to violate this Court's Order, it is perhaps not surprising that United's motion also lacks the requisite legal and factual support.  As a blanket proposition, United asserts that Plaintiffs are required to produce an expert witness on "medical causation."  United fails to acknowledge that "[e]xpert testimony is not an absolute

requirement to establish causation" in every negligence action. <u>Claire's Boutiques v. Locastro</u>, 85 So. 3d 1192, 1195–96 (Fla. 4th DCA. 2012); <u>Greene v. Flewelling</u>, 366 So. 2d 777, 780 (Fla. 2d DCA 1978); <u>Alton Box Bd. Co. v. Pantya</u>, 236 So. 2d 452, 454–55 (Fla. 1st DCA 1970).   Rather, an expert is necessary only when the cause of an injury "is beyond the common knowledge of laymen." <u>Greene</u>, 366 So. 2d at 780; <u>accord</u> <u>Bushman v. Halm</u>, 798 F.2d 651, 658 (3d Cir. 1986) (discussing New Jersey law).

United fails to cite admissible record evidence relating to Plaintiff's post-accident injuries and the cause of those injuries, sufficient to demonstrate that this is the type of case requiring expert evidence.   Plaintiff's version of events recounts a straight-forward impact injury.   (Dkt. 71-1 at ¶¶ 4-5; Dkt. 35-1 at 9).   United's reliance on toxic-tort and product-liability cases, which routinely involve complex causation issues, is therefore misplaced.

Based on the foregoing, United's second motion for summary judgment violates the Court's Case Management and Scheduling Order and falls short of meeting the requirements of Rule 56 of the Federal Rules of Civil Procedure. <u>Clark</u>, 929 F.2d at 608. Rather than striking the motion, the Court will deny the motion on the merits.   Plaintiffs' motion to strike is therefore denied as moot.

## CONCLUSION

Based on the foregoing, it is **ORDERED** that:

(1)   Defendant's Motion for Summary Judgment (Dkt. 45) and Motion for Summary Judgment on Medical Causation (Dkt. 68) are both **DENIED**;

(2)   Plaintiffs' Motion to Strike (Dkt. 69) is **DENIED AS MOOT**;

(3)     On or before **October 6, 2016**, Plaintiffs and Defendant shall each file a supplemental memorandum of law, not to exceed seven pages, addressing whether the law of New Jersey or Florida governs this action.  The parties shall analyze the question under Florida's significant-relationship test, with citation to relevant authority.

Alternatively, the parties may file a joint stipulation on or before **October 6, 2016**, selecting New Jersey law or Florida law to govern this action.  If the parties elect to file a joint stipulation, which shall not exceed seven pages, the parties must include sufficient facts to demonstrate that the chosen state is a "reasonable" choice.  Fed. Ins. Co. v. NCNB Nat'l Bank of N.C., 958 F.2d 1544, 1547 (11th Cir. 1992); Twohy v. First Nat'l Bank of Chicago, 758 F.2d 1185, 1189-91 (7th Cir. 1985).

**DONE AND ORDERED**, in Chambers, in Tampa, Florida on this ___22nd___ day of September, 2016.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of record

16